[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
November 3, 2008
THOMAS K. KAHN
CLERK

_____

No. 07-15121
Non-Argument Calendar

_____

BIA No. A98-559-813

RU ZHAO,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

**(November 3, 2008)**

Before TJOFLAT, ANDERSON and HULL, Circuit Judges.

PER CURIAM:

Ru Zhao ("Petitioner") is a native and citizen of China. She left China on November 17, 2004, traveled to Malaysia and from there to France. She petitions this court for review of the Board of Immigration Appeals ("BIA") order affirming the decision of an Immigration Judge ("IJ") denying her application for asylum, withholding of removal under the Immigration and Nationality Act ("INA"), and protection under the United Nations Convention Against Torture ("CAT"), and ordering her removal. We deny her petition.

Petitioner attempted to enter the United States on December 10, 2004, via the Miami International Airport. She applied for admission but lacked a valid entry document. For that reason, entry was denied, and she was detained. At that time, she told the Immigration authorities that she feared persecution if returned to China.

On December 15, 2004, an asylum officer afforded Petitioner a credible fear interview. When asked why she left China, she said that she liked the United States. When asked whether she would be harmed upon return to China, she responded, "Of course I would be harmed." She would be harmed, she said, due to her membership in a particular social group and political opinion imputed to her. Petitioner said that she feared persecution because in February 2004, Hua Jin Liu, the son of the village Chief, asked her to marry him. When she refused Hua's proposal, Hua said that if she did not marry him, "he would make sure that [she'd]

2

never get married to anyone." He also threatened to harm her family. Perhaps to indicate how far Hua was willing to go, she claimed that on February 20, 2004, he sent an older woman, who arranged marriages, to speak to her parents. She advised them to consent to the marriage. Her parents rejected the marriage proposal, and told the woman that they would not force their daughter to marry a man she did not know.

The same day as her credible fear interview, a Notice to Appear issued, charging Petitioner with inadmissibility for failure to possess a valid unexpired immigrant visa or other valid entry document at the time she applied for admission. Petitioner thereafter filed an application for asylum, withholding of removal and CAT protection. In her application, which was prepared with assistance of counsel, Petitioner essentially repeated what she had said during the credible fear interview. She claimed persecution at the hands of Hua because she had refused to marry him. She described Hua's father as a powerful man who was close to higher governmental authorities. She also said that if returned to China and Hua saw her, "he would rape and hurt" her. She presented a letter from her father, dated April 25, 2005, in which he stated that petitioner "had no choice but to escape from China." He wrote that Hua's father, the village Chief, not Hua, was the first to ask him for permission for Hua to marry Petitioner, and that when he refused the Chief's request, the Chief stated that Petitioner "would not be able to marry anyone

3

else." On June 22, 2005, she appeared before the IJ, admitted the allegations of the Notice to Appear and conceded removability, and swore that the information contained in her application was true, correct, and complete.

On January 31, 2006, Petitioner appeared before the IJ to testify in support of her application. At this time, as the IJ noted in his order of removal, Petitioner provided considerable information not revealed in her credible fear interview or in her asylum application. For example, she said that the village Chief paid more than one visit to her family's residence. On one occasion, he was accompanied by Hua and two others, and when her father again rejected the marriage proposal, they beat him. She did not witness the beating because she was hiding in her father's room where the men "would not dare to go." When pressed by the IJ, she said that they "found me out at last because they did come to my father's room to find me." The IJ asked Petitioner why she did not include in her application this and the other information she was disclosing for the first time. Her response was that she did not disclose all the details because she was detained and upset.

The IJ denied Petitioner's application. In part, the IJ found that Petitioner had not provided a credible explanation for the disparities between what she testified to at the hearing and what she said earlier in the credible fear interview and on her application. The IJ also noted that she had not provided any evidence to corroborate her claims that the Chief had power extending beyond her village or

4

that her father had filed suit to avoid the Chief's confiscation of her family's land, and had not introduced the documentation she used to travel to the United States.

In affirming the IJ's removal order, the BIA found that the IJ's adverse credibility finding concerning Petitioner's request for asylum was not clearly erroneous, given that Petitioner had omitted from her application her allegations (made during the removal hearing), that the village Chief came to her family's home multiple times to pressure her to marry his son, that the Chief came to the family's home with a crew of men, beat her father, and attempted to take her away before being thwarted by a group of villagers, and that the Chief had her father's land confiscated. In her petition for review, Petitioner contends that her omission of details in her application was insufficient to support the IJ's adverse credibility finding, asserting that she had omitted the details of her father's beating because she believed that she should focus only on what happened to her.

We review the decision of the BIA, except to the extent that the BIA expressly adopts the IJ's decision; insofar as the BIA adopts the IJ's decision, we review the IJ's decision as well. Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001). Because the BIA adopted the IJ's decision, in addition to issuing its own decision, we review both decisions. See id. The BIA's and IJ's findings of fact are reviewed under the substantial evidence test, and "[t]o reverse the fact

5

findings, we must find that the record not only supports reversal, but compels it." Mendoza v. U.S. Att'y Gen., 327 F.3d 1283, 1287 (11th Cir. 2003).

An alien may obtain asylum if she is a refugee within the meaning of INA § 101(a)(42)(A). INA § 208(b)(1)(A), 8 U.S.C. § 1158(b)(1)(A). An "extremely detailed adverse credibility determination alone may be sufficient to support the IJ's [or BIA's] denial of an asylum seeker's application." D-Muhumed v. U.S. Att'y Gen., 388 F.3d 814, 818-19 (11th Cir. 2004). Pursuant to 8 U.S.C. § 1158(b)(1)(B)(iii), as amended by the REAL ID Act § 101(a)(3), which governs Petitioner's application and petition for review, the IJ or BIA may find an alien adversely credible based on the "totality of the circumstances," and deny a claim based on inconsistencies, inaccuracies, and falsehoods contained in the evidence, without regard to whether they go to the "heart" of the claim. Chen v. U.S. Att'y Gen., 463 F.3d 1228, 1233-33 (11th Cir. 2006).

In D-Muhumed, 388 F.3d at 819, we found that the IJ's adverse credibility determination was supported by substantial evidence, in part, because the petitioner had omitted from his application a fact that formed a significant part of his claim, namely, that his alleged persecutors attacked his house for two years. In Forgue v. U.S. Att'y Gen., 401 F.3d 1282, 1287 (11th Cir. 2005), we found that the IJ's adverse credibility determination was supported by substantial evidence largely because the petitioner omitted from his application important details of his alleged

6

persecution, namely, his participation in a controversial election, a claim that he was attacked with acid, and a claim that his son was beaten.

In this case, the IJ and the BIA accurately found that Petitioner had omitted from her asylum application significant details regarding her alleged persecution. The record does not compel a holding that the IJ and BIA erred in finding her testimony not credible. Because Petitioner failed to carry the burden of proof on her asylum application, she necessarily failed to carry the higher burden of proof on her applications for withholding of removal and CAT protection. Her petition for review is, accordingly,

DENIED.